UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SUSAN and PATRICK STOLL, MARY and )
CHARLES BOWLES, individually and on )
behalf of all persons similarly situated, )
                           )
             Plaintiffs, )        Case No. 1:09-CV-0364-TWP-DML
                           )
    vs. )
                           )
KRAFT FOODS GLOBAL, INC., )
                           )
          Defendant.

## ENTRY ON MOTION FOR CLASS CERTIFICATION

This matter is before the Court on Plaintiffs' Motion for Class Certification.   Plaintiffs,

Susan and Patrick Stoll and Mary and Charles Bowles ("Plaintiffs"), have brought this action

individually and on behalf of over 100 similarly situated families who live in an area of Attica,

Indiana that has been contaminated with various hazardous substances by a nearby manufacturing

facility and related waste storage and disposal areas (the "Facility").   The Facility was formerly

owned and operated by P.R. Mallory & Company, Inc. ("Mallory").   Defendant Kraft Foods

Global, Inc. ("KFG" or "Defendant"), a Delaware corporation, is Mallory's successor in interest

with respect to Mallory's environmental issues concerning the Facility.   Plaintiffs' putative class

(the "Class") consists of all persons and non-governmental entities that own residential property or

reside on property located within specified geographic boundaries in Attica, Indiana.[1]   The

boundaries purport to represent the area that has been impacted or threatened by contaminants

emanating from the Facility (the "Class Area").   Plaintiffs' homes are located within the Class

---

[1]Plaintiffs attached a map as an Exhibit to their First Amended Class Action Complaint and
their Motion for Class Certification circumscribing the geographic scope of the Class Area.

Area.   For the reasons set forth below, the Court hereby GRANTS Plaintiffs' Motion for Class Certification [Dkt. 43].

## I.   BACKGROUND

From 1957 through 1978, KFG's predecessor Mallory owned and operated the Facility at and around East Park Avenue, Attica, Indiana.   Mallory disposed of and released various hazardous substances, including trichloroethene ("TCE") and tetrachloroethene ("PCE"), into the environment from the Facility.   These substances migrated into the Class Area, resulting in the contamination of residential properties.   According to Plaintiffs' allegations, the groundwater and soil beneath Plaintiffs' and Class Area homes are contaminated, and TCE and PCE vapors are present inside Plaintiffs' and Class Area homes.   KFG is Mallory's successor in interest with respect to environmental issues concerning the Facility.   Moreover, KFG has informed the U.S. EPA and residents of Attica that it is responsible for addressing environmental contamination issues related to the Facility.    As part of its effort to reduce concentrations of TCE and PCE, KFG has offered to install air treatment systems in all homes in the proposed Class.

Plaintiffs' Class, described above, consists of approximately 129 homes and more than 200 people.   Plaintiffs' First Amended Complaint asserts five legal claims against KFG: (1) negligence, (2) private nuisance, (3) trespass, (4) willful and wanton misconduct, and (5) a claim under the federal Resource Conservation and Recovery Act (RCRA) – specifically, § 6972(a)(1)(B).   In addition to an array of damages, Plaintiffs also seek injunctive relief in the form of an order restraining and enjoining KFG from allowing continued contamination of the Class Area, and compelling KFG to abate the contamination it has caused in the Class Area.

## II.   PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs move this Court to certify the Class, asserting that the proposed Class is sufficiently defined and satisfies the requirements of Fed.R.Civ.P. 23.   Moreover, Plaintiffs contend that a class action is the best vehicle for adjudicating this matter.   KFG attacks Plaintiffs' motion on two grounds: (1) Plaintiffs' proposed Class is "overbroad and arbitrary because it fails to link membership in the class to alleged contamination" from the Facility; and (2) Plaintiffs Susan and Patrick Stoll and Mary and Charles Bowles "cannot satisfy the Rule 23(a)(4) requirements because, as owners who occupy their homes ('resident owners'), they cannot adequately represent the interests of (a) property owners who do not reside in their homes but rather lease to others . . . and (b) renters in the proposed class area." [Dkt. 70 at 1-2].

### A.      *Plaintiffs' Class Definition*

To reiterate, Plaintiffs' proposed Class includes all persons and non-governmental entities that own residential property or reside on property located within specified geographic boundaries in Attica, Indiana.   These boundaries represent the homes that are impacted or threatened by contaminants emanating from the Facility.   The boundaries of the Class Area are detailed in a map (the "<u>Exhibit</u>") that was attached to Plaintiffs' First Amended Complaint and their Motion for Class Certification.[2]

---

[2] The Exhibit attached to Plaintiffs' First Amended Class Action Complaint was drawn to "expand the boundaries to add 13 additional homes for which Defendant has recently agreed to provide [an] interim remedy and further sampling based on the results of sampling received after this suit was filed."

As an initial matter, it is axiomatic that plaintiffs seeking class certification bear the burden of proving that the requirements for certification are met. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).   Moreover, plaintiffs seeking class certification must satisfy all four elements of Rule 23(a) and, in addition, one of the requirements of Rule 23(b). Fed.R.Civ.P. 23.   However, before delving into each element of Rule 23, "A well recognized prerequisite to class certification is that the proposed class must be sufficiently definite and identifiable." *Duffin v. Exelon Corp.*, No. CIV-A-06-C-1382, 2007 WL 845336, at *3 (N.D. Ill. March 19, 2007) (citations omitted); *see also Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977) (recognizing that "[w]hile there is nothing explicit in Rule 23" relating to class definition, "courts have held that there is a 'definiteness' requirement implied in Rule 23(a)," and "[w]e do not disagree with that conclusion of law.").

Thus, courts can decline to certify a proposed class where "no evidence establishes a connection between defendants' conduct and the proposed class boundaries." *Brockman v. Barton Brands, Ltd.*, No. 3:06-CV-332-H, 2007 WL 4162920, at *3 (W.D. Ky. Nov. 21, 2007).   Further, "When determining overbreadth, courts inquire whether the class is defined by the defendants' activities." *Duffin*, 2007 WL 845336, at *3.   At bottom, even though a class definition is subject to refinement based upon further development of the record, Plaintiffs' evidence at this stage of the case should show that their proposed class definition is "reasonable." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 383 (D. Colo. 1993).   Contrary to KFG's contentions, however, Plaintiffs' proposed Class is neither arbitrary nor overbroad.   Rather, it is sufficiently definite, identifiable, and linked to KFG's alleged conduct.

4

1.      **Plaintiffs' Evidence**

When viewed *cumulatively*, the available evidence indicates that Plaintiffs' proposed Class

is, at a minimum, reasonably defined.   First, Plaintiffs' expert, Dr. Everett, has provided a sworn

affidavit stating, in part, "As a matter of scientific fact, the entirety of the proposed Class Area

identified in Exhibit 1 to Plaintiffs' First Amended Class Action Complaint is presently

contaminated, and will be contaminated for the foreseeable future, with high levels of highly toxic

and harmful and volatile organic compounds, including . . . TCE and PCE."   Invariably, backed

by evidence unearthed by its own expert, KFG will argue that this conclusion is fatally flawed.[3]

Nevertheless, at this stage in the case, the Court will not entertain a battle of dueling experts.   *See,*

*e.g., In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 297, 311 (E.D. Mich. 2001) ("The fact

that Defendants' expert disagrees with Plaintiffs' expert ... is neither surprising nor relevant.

Such merit-based arguments are inappropriate at the class certification stage of the litigation.").

---

[3]Following Plaintiffs' Reply Brief, both parties filed additional briefing [*See* Dkt. 85 and 89], contesting the merits of the positions advanced by Plaintiffs' expert.   While counsels' advocacy is certainly commendable, at this stage the Court will not – and cannot under the law – delve so deeply into the weeds for purposes of determining whether or not a class should be certified.   A certification fight should not devolve into a fight over which party has the more persuasive expert.

In that same vein, the Court will not jump the gun and assess the parties' estimations from the sampling data.   As the United States Supreme Court has held, there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *see also Mejdrech v. Lockformer Co.*, No. 01-C-6107, 2002 WL 1838141, at *3 (N.D. Ill.   Aug. 12, 2002)*, aff'd* 319 F.3d 910 (7th Cir. 2003) (fact that some putative class members tested negative for TCE does not "overshadow the underlying questions of whether or not Defendants' conduct caused contamination of the area, and, if so, to what extent Defendants should be held liable.").   KFG effectively invites the Court to weigh the credibility of the parties' experts and evidence. At this stage, this request is premature.

Second, in KFG's own words, the Class Area proposed by Plaintiffs was "designated as part of a cooperative effort between CRA [Conestoga-Rovers & Associates, the consulting firm retained by KFG to investigate and remediate the environmental conditions near the Facility] and U.S. EPA to identify, in an overly conservative and protective manner, an area . . . to be investigated to determine extent of any indoor air contamination in the area." [Dkt. 70 at 8]. Despite KFG's best efforts to phrase this delicately, KFG's own consulting firm identified this area as potentially problematic.   Plaintiffs' proposed Class Area cannot be branded baseless.

Third, KFG has offered to install temporary remedial measure systems (i.e. "vapor mitigation" systems) in the Class Area homes.   KFG contends that such an offering is not probative evidence of the geographic scope of contamination, as it was merely a proactive, preventative measure.   KFG likens its behavior to that of the defendant's conduct in *Duffin*, when it distributed bottled water immediately following the release incident. [Dkt. 70 at 9].   However,

6

most objective persons would agree that a vapor mitigation system is significantly different from bottled water.   KFG's willingness to install a system in this particular area suggests the possibility that Plaintiffs have correctly circumscribed the geographic boundaries for purposes of class certification.

### 2.    Geographic Scope

In addition to pointing out the flaws in Plaintiffs' evidence, KFG argues that the proposed Class should not be certified because it is defined in terms of geographic boundaries, not environmental impact.   According to KFG, Plaintiffs' proposed Class runs afoul of the rule that the scope of a class needs to be linked to actual or threatened contamination of property.   The Court is not persuaded.   After all, this argument ignores the reality that the Class Area is basically coextensive with the investigation area delineated by KFG's consultant and submitted to the EPA. As such, it is not unreasonable for Plaintiffs to infer that the Exhibit fairly reflects the area impacted or threatened by contaminants released from the Facility.    What is more, this Court need not circumscribe and adjudicate the geographic boundaries of the Class Area at this stage. *See, e.g., Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 912 (affirming that the question of the geographic scope of contamination was properly set for class treatment).

Overall, given Plaintiffs' expert, the Exhibit, and KFG's offer to install vapor mitigation systems, Plaintiffs had a logical reason for drawing the lines where they did.    Under any standard or from any perspective, Plaintiffs' proposed Class Area is reasonable, closely tied to geographic boundaries, and based on KFG's alleged conduct.   Plaintiffs' proposed Class is neither arbitrary nor overbroad.

In making this determination, the Court is cognizant of the Seventh Circuit's admonition that, when considering a motion for class certification, a court should not accept a Plaintiffs'

allegations and statements in lockstep. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) ("Before deciding whether to allow a case to proceed as a class action . . . a judge should make whatever factual and legal inquiries are necessary under Rule 23."). However, this language does not give courts license to weigh evidence and determine merits at the class certification stage. *See Eisen*, 417 U.S. at 177. Here, the Court has endeavored to strike the appropriate balance: assessing the arguments under Rule 23 without prying into and adjudicating the actual merits of the case.

### B.   *Rule 23 Requirements*

Having determined that Plaintiffs' proposed Class is sufficiently defined for purposes of class certification, the Court now turns to the issue of whether the proposed Class satisfies the strictures of Rule 23. Plaintiffs bear the burden of establishing that the action satisfies the four requirements of Rule 23(a): "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Mejdrech*, 2002 WL 1838141, at *2 (quoting *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993)). "All of these elements are prerequisites to certification; failure to meet any one of these precludes certification as a class." *Retired Chicago Police Ass'n*, 7 F.3d at 596 (citation omitted). As discussed above, generally, "a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained." *Id.* at 598 (citation omitted). Even so, a judge may make factual and legal inquiries to ensure that the requirements of Rule 23 have been satisfied. *Szabo*, 249 F.3d at 676. Upon satisfying the requirements of Rule 23(a), Plaintiffs "must satisfy one of the conditions of Rule 23(b)." *Rochford*, 565 F.2d at 977. Finally, "a district court has broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997) (citation omitted).

1.      **Rule 23(a) Requirements and Analysis**

KFG maintains that under 23(a) (4) Plaintiffs have failed to show that the proposed Class

has adequate representation.   Given KFG's silence on 23(a) (1) through (3) – numerosity,

commonality, and typicality – the Court assumes that KFG concedes that these prerequisites have

been satisfied.   Nevertheless, although three of the four requirements have not been contested, the

Court will analyze each one separately.

a.      **Numerosity**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is

impracticable." Fed.R.Civ.P 23(a)(1).   To establish this, "Plaintiffs must provide some evidence

or reasonable estimate of the number of class members." *Mejdrech*, 2002 WL 1838141, at *3

(citation omitted).   Generally, a class of more than 100 satisfies this requirement. *Ludwig v.*

*Pilkington North America, Inc.*, No. 03-C-1086, 2003 WL 22478842, at *2 (N.D. Ill. Nov. 4,

2003); *see also Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir.

1969) (stating that class of 40 stockholders could be sufficiently large to satisfy 23(a)(1)).   Here,

Plaintiffs estimate that the Class consists of   129 homes and more than 200 people.   KFG does

not dispute Plaintiffs' calculation or Plaintiffs' assertion that this number is sufficient to establish

numerosity.   The Court finds that Plaintiffs' proposed Class satisfies 23(a)(1).

b.      **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."

Fed.R.Civ.P 23(a)(2).   As the Seventh Circuit has held, a "common nucleus of operative fact"

generally fulfills this requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).   This

common nucleus is typically found "where the defendant has engaged in some standardized

conduct toward the proposed class members." *Mejdrech*, 2002 WL 1838141, at *3 (finding that

9

defendants engaged in standardized conduct by allowing TCE to contaminate the soil, groundwater, and property in the plume of contamination).   Moreover, small differences among class members will not be prevent Plaintiffs from establishing commonality. *See id.* (finding element of commonality was met even if some class members had a well, a basement, or otherwise tested negative for TCE).   Here, KFG allegedly engaged in standardized conduct by permitting TCE and PCE to migrate into the Class Area.   This common nucleus of fact meets the element of commonality, and KFG does not dispute this.

### c.    Typicality

Rule 23(a)(3) mandates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P 23(a)(3).   "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation and internal quotations omitted).   Moreover, like commonality, "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Id.*; *see also Ludwig*, 2003 WL 22478842, at *3 (finding that factual differences such as "differing levels and sources of arsenic contamination" did not defeat typicality, given that plaintiffs' claims arose out of the same course of conduct – the defendant's disposal of arsenic containing waste).

Here, Plaintiffs' advance the same legal claims and theories for the proposed Class that they advance for themselves, and all claims are premised upon the same core questions of law and fact.   Moreover, as discussed in more detail below, any differences in damages among the Class members can be ironed out by bifurcating the trials – first adjudicating liability and then, if

necessary, individual damages. *See Mejdrech*, 319 F.3d at 911 ("Whether a particular class member suffered any legally compensable harm and if so in what dollar amount are questions that the judge reserved for individual hearings if and when [defendant] is determined to have contaminated the soil and water under the class members' homes in violation of federal or state law."). At bottom, KFG does not contest the element of typicality, and the Court finds that the proposed Class satisfies this element.

### d.   Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P 23(a)(4). This requirement means that a class representative: (1) cannot have antagonistic or conflicting claims with other class members; (2) must have a sufficient interest in the outcome of the litigation to ensure vigorous advocacy; and (3) must retain counsel that is competent, experienced, and generally able to vigorously conduct the proposed litigation. *Mejdrech*, 2002 WL 1838141, at *5 (citation omitted). KFG does not dispute (2) or (3), and the Court has no reason to question either requirement.

KFG does, however, argue that "[e]ach of the named plaintiffs, as Class Representatives who own and reside in their homes, have claims and interests which are potentially antagonistic and in conflict with the claims and interests of (1) proposed class members who are renters and (2) proposed class members who are landlord owners." [Dkt. 70 at 13]. To forge this argument, KFG divides the proposed Class into three sub-groups – (1) resident owners, (2) landlord owners, and (3) renters. KFG then posits that each group would be entitled to varying damages *should their claim prove meritorious*. For instance, resident owners may seek the cost of remediation plus any reduction in the fair market value of the property. Landlord owners, meanwhile, may seek compensation for lost rent plus any reduction in the fair market value of the property. Even more

11

different, renters' damages may be limited to the nuisance they endured or some other form of compensation.   According to KFG, these differences create an inherent conflict of interest.   KFG illustrates this point by highlighting that in making their damages arguments, landlords and renters may have incongruent incentives.   Landlords may argue that the contamination has reduced rents, whereas renters may argue that the impaired state of the property was not impounded into the rents they were paying.   KFG insists that these potentially divergent interests are fatal to Plaintiffs' satisfaction of 23(a)(4).

The Court respectfully disagrees.   First, Plaintiffs have the same overarching incentive as all other Class members: to hold KFG liable for the contamination.   In this sense, all interests are well-aligned.   Second, should KFG be held liable, an individualized assessment of damages will be necessary, meaning that different Class members may be entitled to very different damages. But this is no reason to deny certification. *See, e.g., De La Fuente*, 713 F.2d at 233 ("It is very common for . . . class actions to involve differing damage awards for different class members."); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action.").   As the Seventh Circuit has recognized, a bifurcated trial – detaching liability from damages – would ameliorate any problems stemming from the individual Class members' disparate recoveries.   After all, any individual's unique monetary relief is a question that the judge can reserve for individual hearings. *Mejdrech*, 319 F.3d at 911.   Thus, the existence of administrative hiccups related to calculating damages does not establish that Plaintiffs have interests antagonistic to or in conflict with other Class members. This is   particularly true given that all members of the proposed Class are seeking injunctive relief. *See, e.g. Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477-78 (S.D. Ohio 2004).

12

Finally, it is worth noting that pursuant to Fed.R.Civ.P. 23(c)(1), the district court can revisit this decision, if necessary.   Specifically, a district court can at any time before final judgment revoke or alter class certification "if it appears that the suit cannot proceed consistent with Rule 23's requirements." *Rochford*, 565 F.2d at 977.   All in all, the Court is   not persuaded by KFG's argument that Plaintiffs failed to satisfy 23(a)(4).

2.      **Rule 23(b) Requirements and Analysis**

Because Plaintiffs have satisfied all elements of 23(a), the Court must now determine whether the proposed Class satisfies the additional requirements of Rule 23(b)(1), Rule 23(b)(2), and/or Rule 23(b)(3).   Plaintiffs maintain that their cause of action should be certified under all three subsections, and, on this point, KFG does not put up a fight.   Regardless, it is still worthwhile to analyze each subsection separately.

a.      **23(b)(1)**

A class action may be maintained under 23(b)(1) if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications" or adjudications for some members that would be "dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1).   Simply stated, if over 100 individual cases are tried, varying judgments are likely to ensue.   In this sense – and KFG does not dispute this – Plaintiffs satisfy 23(b)(1).   Further, as a practical aside, the need for class action status is especially acute where, as here, "a significant focus of this case is on obtaining injunctive relief – investigation and abatement of contamination present throughout the Class Area – which needs to be decided and implemented on a uniform basis." [Dkt. 44 at 10].

13

### b. 23(b)(2)

A class action may be maintained under 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2).   Plaintiffs have undoubtedly sought injunctive relief in this matter.   Moreover, the fact that Plaintiffs' have requested monetary damages is not fatal under this Rule. *See, e.g., Mejdrech*, 2002 WL 1838141, at *7 ("Defendants have not adequately demonstrated Plaintiffs' request for injunctive relief is only a ruse to cover up the overriding goal of monetary relief.").   Accordingly, Plaintiffs have satisfied Rule 23(b)(2).

### c. 23(b)(3)

Finally, a class action may be maintained under 23(b)(3) if Plaintiffs can show that "questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed.R.Civ.P. 23(b)(3).   "Considerable overlap exists between 23(a)(2)'s commonality prerequisite and 23(b)(3).   Rule 23(a)(2) requires that common issues exist; Rule 23(b)(3) requires that they predominate." *Mejdrech*, 2002 WL 1838141, at *6 (quoting *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1419 (N.D. Ill. 1996)). As discussed above, a common nucleus of operative fact overrides any factual discrepancies among the proposed Class members.   The Court – following other courts that have addressed this issue under similar factual circumstances – finds that this cause of action arises out of the same alleged course of conduct by KFG, and common questions predominate over individual ones. *See, e.g. Mejdrech*, 2002 WL 1838141 *aff'd* 319 F.3d 910; *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

14

Additionally, the Court agrees with Plaintiffs that a class action is the best vehicle for adjudicating this matter in a fair and efficient fashion.   There are over 100 households in the proposed Class, meaning that without a class action, over 100 very similar lawsuits could be brought.   Each lawsuit would cover the same legal terrain with virtually identical evidence. Obviously, a class action would eliminate considerable replication, thus resolving this matter more efficiently and expeditiously.   For these reasons, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(b)(3).

## III. CONCLUSION

For the reasons noted herein, the Court finds that Plaintiffs have adequately defined the Class and satisfied the requirements of Rules 23(a) and 23(b).   Therefore, Plaintiffs' Motion for Class Certification [Dkt. 43] is GRANTED.

SO ORDERED.

Dated: 09/06/2010

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

15

Distribution to:

Norman B. Berger
VARGA BERGER LEDSKY HAYES & CASEY
nberger@vblhc.com

Cory Stephen Brundage
cb@brundagelaw.com

Shawn M. Collins
THE COLLINS LAW FIRM, P.C.
smc@collinslaw.com

Philip L. Harris
JENNER & BLOCK LLP
pharris@jenner.com

Michael D. Hayes
VARGA BERGER LEDSKY HAYES & CASEY
mhayes@vblhc.com


Robert Srader Hulett
HACKMAN HULETT & CRACRAFT LLP
rhulett@hhclaw.com

Edward J. Manzke
THE COLLINS LAW FIRM, P.C.
ejmanzke@collinslaw.com

Aaron W. Rapier
THE COLLINS LAW FIRM, P.C.
arapier@collinslaw.com

Steven M. Siros
JENNER & BLOCK LLP
ssiros@jenner.com

Ellen Morrison Townsend
HACKMAN HULETT & CRACRAFT LLP
etownsend@hhclaw.com